It's been a while. Well, actually it's been since April, Your Honor, which was, you know, the two years before that were a long time. May it please the Court, Gail Ivins appearing this morning on behalf of defendant appellant Thy Chann. Your Honor, there's a little bit of a bait-and-switch here between what happened in the district court and what the government argues on appeal. In the district court, their position with respect to the co-defendant disparity argument and with respect to the three more culpable, clearly more culpable co-defendants, was that they had not been resentenced post-Davis. So we couldn't look at their 240-month sentences, which were the remnant, right? They'd gotten life sentences, but on the rest of their counts the court had, you know, run the 20-year sentences concurrent. And so once the life sentence was set aside, what was to happen to re-sentence the more culpable co-defendants, despite all the conversation that went on about it? I'm just lost at what anybody thought would get those folks back. The PSR writer was comparing them as a 240-month sentence. So the appeal for those three, which had been a government appeal, had been decided in July before Mr. Chann was re-sentenced in January. And during all of those pretrial proceedings, the position had been, you know, they're going to come back, they're going to come back, they're going to come back. And Judge Shub actually had inquired at one of the first hearings on the four, you know, there were seven altogether. So there's Mr. Chann, three less culpable, I'll go with that, three less culpable, and three more culpable. And at that initial hearing, Judge Shub actually indicated an interest in re-sentencing all seven at the same time. But, you know, they went ahead and proceeded, I think, partly because with respect to the three less culpable, they were maxed out at 240 because of the number of convictions they had. And so they wanted to get it over with because they saw some possibility of release. And then Mr. Chann, you know, went ahead and went and got re-sentenced without waiting for the other three. But they could still be re-sentenced, as far as I read the law. All Judge Shub would have to do is set it for re-sentencing. The sentences were unbundled when the motion to strike the Life 924C was granted. So those sentences became unbundled, as far as I know. Judge Shub just hasn't gotten a note from his clerk, certainly no notice from the government, that he should re-sentence those three. It's very confusing, which is why I asked for a Rule 10e remand initially, was to try to nail this down before becoming before the court. You know, what troubles me about this, Ms. Ivins, is that it doesn't seem like Judge Shub knew he was being deceived or that he knew that these other folks, the more culpable three, weren't going to basically be released. So you got that element. You have the fact that the 3553A six factors only applied to the national equality. It isn't people involved in this crime, per se, or these crimes. And then you have the fact that he, from my perspective, made it very clear that he felt he owed an obligation to the victims of the crime, and that he was going to sentence this defendant what he was going to sentence, and it didn't matter what. So if that's the case, he didn't know it was false. He didn't have to have equality amongst these folks. And he says, this is what I'm going to do. Are we kind of wasting our time to send this back if we do? No, because I think Judge Shub was clear in the amount of detail he went to that it was important to him to know what the other three were going to be sentenced to. And that is certainly a fact he can consider, and I think he would have considered, which is why he initially said, let's do it all together. Let's look at them all together. And I think if someone were to show up today in Judge Shub's courtroom and say, hey Judge, this is what actually happened, I think he'd be concerned about that, and I think he'd like the opportunity to correct that. Because, I mean, and it's very possible that what he would do is max out Luong, Hun, and Latanafon. I mean, that might be his solution to this. I know you said this before, but you're saying that even though these folks essentially are done, he can bring them back and sentence them again, is that right? My understanding of the law, my analysis, maybe the government will have something to say that's different, but my analysis is those sentences remain unbundled. There's never been a new judgment and commitment order entered. He's never resentenced them to concurrent time post the re-bundling. So I think they're still on supervised release? Well, some of them have been released and are on supervised release, yes. So somehow, which is why I filed the Rule 10 e-motion, somehow the Bureau of Prisons processed the 240 months, despite the fact that they weren't resentenced. And I cannot tell the court how that happened, because it should not have happened. At least where I was raised in the Central District, I But you need a JS-6 in order to process a release at the Bureau of Prisons. So I don't understand how that happened, and thus my request to clarify or correct the record. But Judge Shub could certainly also look at Mr. Chan on resentencing and say, more culpable co-defendants simply got an unusual break, and justice still demands a long sentence for Mr. Chan because of the Mr. Chan is, I mean, in terms of the counts of conviction, he and LaTanifan are identically situated, right? They have three counts with 20-year maxes. The other two have four counts, so they didn't get a break. I mean, they got a break because they haven't been resentenced. So it's not like the other three. The three lower got a break because they only had the one count of conviction, two of them. One of them got 216, so he got a sentence lower. But two of them got maxed out at 240 because they had one count of conviction. The other three, there's nothing special about their situation that wouldn't allow a 720 or more 960 sentence. What's your best case or rule that suggests that we should send this back for reconsideration by Judge Shub, even though, at least from my perspective, he did not violate any rules or cases in this defendant as he did? Because he was under a factual misapprehension. Okay, but if he didn't rely on that, does it matter? Well, I think he did rely on it, though. I mean, he on multiple occasions talked about disparity and asked that question and was told, you're going to get a chance to resentence him. So in his mind, he was maxing out Mr. Chan with an understanding that he would get to do the same to the other co-defendants. And that's your supposition because he asked about what was happening with the other? Multiple times. I mean, at every hearing, at every opportunity, he queried that and seemed very concerned about that. And I, there's nothing he said about Mr. Chan that would not equally apply or more to the three more culpable co-defendants in terms of the victims getting justice, in terms of the, you know, gruesomeness of the case. Letanifan's the one who actually shot the victim and killed him. I mean, it wasn't Mr. Chan, it was Mr. Letanifan. Luong was the crew boss, the leader. He organized all of this. Query whether Mr. Chan would have gotten involved, but for Mr., you know, Luong recruiting him and creating, I mean, there's just no way that they're not more culpable. And therefore— Do you want to save any time for— Yeah, I do. Thank you, Your Honor. I was just checking that. Good morning, Your Honors. My name is Jason Hitt. I'm an assistant United States attorney from the Eastern District of California. May it please the Court, I think the Court has hit on the precise issue here, which is the Court reviews for abuse of discretion as it relates to Judge Shub's resentencing of T. Chan. Discretion is appropriate here, and deference to the District Court. The District Court has lived with this case since 1999. I tried— But isn't it living with the case under misapprehension that was caused primarily by five different assurances by you that these three more culpable co-defendants would be back in front of them? There was a mistake made by myself. I don't think the sentencing transcript, it's a red herring to suggest that the Court focused on the resentencing of Luong, Latana, Pham, and Nguyen because the— Why were these conversations going on then? There were very few references to it because— There's five. The focus of the briefing and the argument is about the resentenced defendants who are procedurally distinct from the other— Mr. Hitt, there are five instances where the Court is asking about the more culpable co-defendants in all five instances. I mean, one, he said, when the dust settles, Mr. Hitt, are these folks coming back, the more culpable folks coming back in the same position as Mr. Chan? And you said yes. And in arriving at its sentence, the judge did not rely on that assurance. Instead— How do you know? How do you know? The record is very clear that the focus, as Your Honor mentioned, was bringing justice to the victims. There were three different crimes that Mr. Chan was convicted of. There were distinct harms and distinct buckets of evidence that were specific to Chan. And when compared to Bao Lu, Son Van Nguyen, and Hong Ai Lei, 720 was the appropriate sentence. And the Court made clear in reviewing for abuse of discretion that those factors were what drove the sentence imposed in this case. Right, but the fact he wants to compare Mr. Chan to the less culpable co-defendants, doesn't it speak to the fact he would want to compare them to the more culpable co-defendants, too? And he is to some degree, because he thinks he's going to be able to give them much higher sentences. To the extent there's a culpability question, so just to be clear, Mr. Leung will never get out. He has Northern District RICO convictions that are separate from this case. With respect to Latanifong and Minh Nguyen, the reason that there was a distinction and the reason that I made the mistake is that the procedural stance was they made Rule 12 motions after a limited remand from this court on appeal because they went to trial later. I am not as confident as Ms. Ivins that we have a procedural mechanism. Mr. Latanifong's lawyer certainly believes otherwise. I can imagine. And I think even in the transcript, despite my mistake, the court is clear that it says at one point in the transcript, look, when I impose those concurrent sentences of the original sentencing for the more culpable or the other defendants, I only had mandatory life. So using that as a comparison really is not appropriate in the sense that the court realized itself in resentencing Mr. Chan that it wasn't a meritorious or substantive analysis when it applied 20 years and what the PSR said was you imposed a sentence of 20. That's not true. And I think Ms. Ivins' term is appropriate. The remnants of what was left and the reason BOP executed the judgment was that was all that stood after the Rule 12s were granted. Given the fact, as my colleague has pointed out, that there were five separate references to this, even if the judge didn't, in quotes, abuse his discretion, doesn't it make sense to at least give him the opportunity to consider, in light of what actually happened with the three more culpable defendants, whether he wants to reevaluate the sentence? He may not. He may say, I said once before I'm going to give him 720, and that's what I'm going to do, and that's fine. But doesn't that make sense in this situation? I don't think so, only for the reason that the court laid out, if it was a very limited sentencing transcript or a very sort of pro forma, certainly the court's point would be well taken. I think here, though, you have a very specific, and under Rita and Trujillo, a transcript that demonstrates this district court gave this court plenty of evidence about why it was exercising and how it was exercising its sentencing discretion that's separate and distinct from my mistake. I take that, I get that, and I personally don't think he violated any laws. I don't think he violated any rules, but this is a matter of . . . let me put it this way. District judges have a very difficult job in sentencing people. It's a lot of gut feel, it's not always black and white, where it's really, really clear. I'm just thinking that in this case, where you, in good faith, told the judge something he was perhaps relying on, perhaps that would have played a role. What harm is there in letting him take another crack at it? If he stays with the 720, then the government's in good shape. If not, these folks are entitled to . . . I mean, this defendant is entitled to a new look. I take the court's point. It's a pragmatic one and I understand it. Having lived with the case since 2004 and being in front of this judge, I read the sentencing transcript and having been present for the resentencing as a genuine expression of how the court wanted to exercise its discretion. If we send it back, he may do it again. If the court sends it back, though, you would have to make a finding that I think is inconsistent with the sentencing transcript. You would have to find that the deference typically given to a judge in Judge Shub's position was not properly exercised, that he abused his discretion. I think that's not fair under the transcript. I think the record demonstrates the court . . . Do we have to find that? Can't we just find the misrepresentation, and I'm not saying it was intentional or that you were trying to pull a fast one, but that the misrepresentation was material and that enough is enough for a due process violation? Not as I read the court's cases. As I read the precedent that the court has laid out for what we are as a very limited resentencing appeal here, it is abuse of discretion, and if you have enough in the record under Rita and Trujillo, you affirm, unless you find an abuse of discretion on how the court exercised its discretion. Let me ask you this just in general. I mean, U.S. Attorney . . . AUSAs are always coming in front of me with co-defendants, and sometimes we were . . . just because of timing, a mid-level co-defendant gets sentenced first, and then a more culpable one comes in, and it's certainly not unusual for even the government to say, Judge, given propensity issues or disparity issues, we think it's appropriate that this be already done. Why wouldn't you want to do that here? Because the court knows who those defendants are and who Mr. Chan is and who he resentenced, and it's all consistent. So Hong Ai Lei, Sun Van Nguyen, and Bao Liu, all were relevant and appropriate comparisons, and the court really engaged in the vast majority of the sentencing transcript with that comparison, and I think that's the appropriate one. The other defendants, I don't think, are less culpable or . . . Leung is certainly more culpable, but the court was under no illusion that those people would justify a lower sentence for Mr. Chan, and in evaluating why the court selected 720, I think the transcript is abundantly clear it was an appropriate exercise of sentencing discretion as to this defendant, and finding an abuse would be very difficult because the court laid out why it was an abuse. It had to do with the victims. It had to do with the nature of the crimes. These are terrible convictions that Mr. Chan sustained, and evaluating Mr. Chan under 3553, that's what the sentencing court did, and I think it was an appropriate exercise of its sentencing discretion. Under the guidelines, or indeed, I suppose above the guidelines, could the court have sentenced the three more culpable defendants to greater than 720 months, or was that the maximum? I don't think so because the convictions that remained as to any defendant who was convicted of a Hobbs Act conspiracy, the max was 20, and I can't recall exactly which ones Minh Nguyen was convicted of or Le Tanafong, but the most you could do would be 720 as to those defendants. Leung, in theory, I guess he was convicted of all four, but to the court's understanding in life, there wouldn't be much more to do. I guess what plays in my mind on this is that if we're saying there's a possibility that the other three might be resentenced, and if they were, they could be sentenced to more than 720 months, that would play on in my view about this, but if they would get 720 max anyway, and the court said we're going to do that, that's a different scenario, isn't it? I think this is the problem I have with the argument, is one, framing them as more culpable, and two, speculating about what the court might do or might not have done. We know what the court did, and we know why the court did it. But didn't the PSR frame them as more culpable, and didn't the court accept that? I don't think so. The PSR laid out— One of them shot and killed somebody. How can you say he's not culpable? Well, he did. He also shot Mr. Chan. I mean, they were all in the same room together controlling the victims. But typically, you would agree the shooter is more culpable than the driver or the aider and other participants. I think in general, but not in this case. This is a very unique set of facts, having tried it. Yeah. All right. Your time is up. Let me ask my colleagues, do either have any additional questions for the government? All right. No, I just want to thank Mr. Hitt for appearing personally. Indeed. Thank you. Thank you very much. So, Ms. Ivins, as you're wending your way to the podium there, I have a question for you. Your colleague has raised a very real point. If we send this back, on what basis? Is there an abuse of discretion? Is it a due process violation? If we do, we've got to have some reason for it. What is it? Well, A, I think that Gall, Rita, and Hinkson stand for the proposition that's an abuse of discretion if the sentence is based on materially incorrect facts. And here, only because we have these additional facts that can be gleaned from the BOP website and from the concession in the government's brief, we know that there were materially incorrect facts that the judge relied on. I think it's clear he relied on it. So, in other words, we would have to assume that the judge relied on these material misstatements of fact? Yes. In order to qualify under Gall, Rita, and so on? Alternatively, and I want to be clear, I did ask, and I was turned down, this court could just go with my alternative remedy, which is remand under 10E, and say, we don't know enough, and we need to know more. I think that's a perfectly appropriate position to take. I mean, I think you could find an abuse of discretion not based on anything Judge Shub did wrong, but on something we now know he would have taken into consideration, and what he did rely on was materially wrong. Or, we could remand under 10E, hold this appeal in abeyance, and I can go talk to Judge Shub and try to figure out whether it would have mattered to him and explain all of the stuff we now know. But from your perspective, Gall, Rita, Hinson, cover the abuse of discretion concept, because we can assume that he relied on material misstatements of fact in his sentence. Is that right? And I think the number of times that he asked about it, and the very detailed presentation Attorney Weston made in the district court about it being 240 months, and she argued it, and it was just dismissed and dismissed and dismissed. And I gather you're not claiming scienter on the part of any of these lawyers. They just didn't know, right? Right. And now . . . They thought it was correct, and it wasn't. And I do want to correct one thing. I believe, and I'm happy to be corrected by someone who wants to call the BOP, I checked yesterday, and Luong is scheduled to be released February 26, 2055, which is a year before Mr. Chan is scheduled to be released. The other two have been released. So no one's doing life in this case, and Mr. Chan is doing more time. All right. Is it your position, Mr. Chan, in terms of the 720, it's the exact same position that the others would have been in? I think as Mr. Hitt said, they've either got three or four 20-year max convictions. So they're all similarly situated. Mr. Chan has three, and the other ones either have three or four. Okay. So similarly situated with at least one and maybe two. Okay. Very well. Thank you. Any other questions by my colleagues? No. I think we're good. Thank you both very much for your argument. We appreciate it. And we, as Judge Thomas pointed out, we very much appreciate your being here in person. It's kind of nice to be back and almost normal. What shall I say? All right. Thank you. The court stands adjourned for the week.
judges: THOMAS, SMITH, McShane